No. 19-70014

In the United States Court of Appeals
For the Fifth Circuit

**JAMES GARFIELD BROADNAX,**
*Petitioner - Appellant,*

**v.**

**BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,**
*Respondent - Appellee.*

**On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
USDC No. 3:15-cv-01758-N**

**BRIEF IN SUPPORT OF APPEAL**

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Steven C. Herzog
Kimberly A. Francis
Ameya S. Ananth
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

**BURLESON, PATE & GIBSON,
L.L.P**
Camille M. Knight
900 Jackson Street, Suite 330
Dallas, TX 75202
(214) 871-4900

COUNSEL FOR PETITIONER JAMES GARFIELD BROADNAX

**<u>CAPITAL CASE</u>**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A. Parties:

| | |
|---|---|
| Petitioner-Appellant: | James Garfield Broadnax |
| Respondent-Appellee: | Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division |

B. Attorneys:

| | |
|---|---|
| For Petitioner-Appellant: | Steven C. Herzog<br>Kimberly A. Francis<br>Ameya S. Ananth<br>Paul, Weiss, Rifkind,<br>Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 |
| | Camille M. Knight<br>Local Counsel<br>Burleson, Pate & Gibson, LLP<br>900 Jackson Street, Suite 330<br>Dallas, TX 75202 |

For Respondent-Appellees:

Garrett M. Green
Office of the Attorney General
for the State of Texas
300 W. 15th Street
William P. Clements Building
Austin, TX 78701

Stephen M. Hoffman
Assistant Attorney General
Office of the Attorney General
Financial Litigation and Charitable
Trusts Division
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548

Edward Larry Marshall
Office of the Attorney General
Criminal Appeals Division
P.O. Box 12548
Austin, TX 78711-2548

*/s/ Camille M. Knight*
Camille M. Knight
Local Counsel
*Attorney of Record for James
Broadnax*

August 24, 2020

Signed:        */s/ Camille M. Knight*
Camille M. Knight

ii

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2), oral argument is warranted because this appeal presents complex questions of fact and law regarding the Supreme Court's decision in *Cullen* v. *Pinholster*, 563 U.S. 170 (2011) and 28 U.S.C. § 2254(d), and the proper interpretation and application of the Supreme Court's decision in *Batson* v. *Kentucky*, 475 U.S. 79 (1986).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................... iii

TABLE OF AUTHORITIES ......................................................................... vi

JURISDICTIONAL STATEMENT .................................................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 1

STATEMENT OF THE CASE ...................................................................... 2

I.　　FACTUAL BACKGROUND ............................................................... 2

　　　A.　Jury Selection and Trial ..................................................... 2

　　　B.　Broadnax's State Court Proceedings ...................................... 5

　　　C.　Federal Court Proceedings ................................................... 5

SUMMARY OF THE ARGUMENT .............................................................. 7

STANDARD OF REVIEW .......................................................................... 8

ARGUMENT .......................................................................................... 9

I.　　THE DISTRICT COURT INCORRECTLY DENIED
　　　BROADNAX'S *BATSON* CLAIM AND INCORRECTLY
　　　DETERMINED THAT CONSIDERATION OF THE
　　　SPREADSHEET WAS BARRED ......................................................... 9

　　　A.　*Pinholster* Does Not Bar Consideration of the Spreadsheet ........... 9

　　　B.　The CCA's Decision Was Unreasonable on the Record Before
　　　　　It; § 2254(d) Thus Does Not Bar Consideration of the
　　　　　Spreadsheet ..................................................................... 15

CONCLUSION ...................................................................................... 20

CERTIFICATE OF SERVICE ..................................................................... 22

iv

CERTIFICATE OF COMPLIANCE........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins* v. *Warden, Holman CF,*
   710 F.3d 1241 (11th Cir. 2013) ...................................................................17, 19

*Batson* v. *Kentucky,*
   475 U.S. 79 (1986)...................................................................................passim

*Broadnax* v. *State,* No. AP-76207, 2011 WL 6225399
   (Tex. Crim. App. Dec. 14, 2011)...................................................................3, 5

*Chamberlin* v. *Fisher,*
   885 F.3d 832 (5th Cir. 2018) ...............................................................................20

*Clark* v. *Stephens,*
   627 F. App'x 305 (5th Cir. 2015) .......................................................................13

*Cullen* v. *Pinholster,*
   563 U.S. 170 (2011)..................................................................................passim

*Dickens* v. *Ryan,*
   740 F.3d 1302 (9th Cir. 2014) ...........................................................................13

*Escamilla* v. *Stephens,*
   749 F.3d 380 (5th Cir. 2014) .............................................................................13

*Evans* v. *Davis,*
   875 F.3d 210 (5th Cir. 2017) .......................................................................18, 19

*Flowers* v. *Mississippi,*
   139 S. Ct. 2228 (2019)..........................................................................17, 18, 20

*Foster* v. *Chatman,*
   136 S. Ct. 1737 (2016)........................................................................................19

*Gibson* v. *Wetzel,*
   2016 WL 1273626 (E.D. Pa. Mar. 31, 2016) ...................................................12

*Hayes* v. *Thaler,*
   361 F. App'x 563 (5th Cir. 2010)......................................................3, 14, 15, 17

*Hooper* v. *Ryan*,
    729 F.3d 782 (7th Cir. 2013) ...............................................................16

*Madison* v. *Comm'r, Ala. Dep't of Corr.*,
    761 F.3d 1240 (11th Cir. 2014) ...........................................................16

*McGahee* v. *Ala. Dep't of Corr.*,
    560 F.3d 1252 (11th Cir. 2009) ...........................................................18

*Miller-El* v. *Cockrell*,
    537 U.S. 322 (2003)...............................................................................18

*Miller-El* v. *Dretke*,
    545 U.S. 231 (2005).........................................................................passim

*Nelson* v. *Davis*,
    952 F.3d 651 (5th Cir. 2020) ...............................................................13

*Ramey* v. *Davis*,
    942 F.3d 241 (5th Cir. 2019) ...............................................................15

*Reed* v. *Quarterman*,
    555 F.3d 364 (5th Cir. 2009) ...............................................................17

*Rivera* v. *Quarterman*,
    505 F.3d 349 (5th Cir. 2007) .................................................................8

*Sanchez* v. *Roden*,
    753 F.3d 279 (1st Cir. 2014)................................................................16

*Slack* v. *McDaniel*,
    529 U.S. 473 (2000)...............................................................................1

*Smith* v. *Cain*,
    708 F.3d 628 (5th Cir. 2013) ...............................................................16

*Thomas* v. *Vannoy*,
    898 F.3d 561 (5th Cir. 2018) ...............................................................19

*Wessinger* v. *Cain*,
    2015 WL 4527245 (M.D. La. July 23, 2015)........................................14

*Williams* v. *Taylor*,
   529 U.S. 420 (2000)..................................................................................12

*Wilson* v. *Sellers*,
   138 S. Ct. 1188 (2018)........................................................................18, 19

*Winston* v. *Pearson*,
   683 F.3d 489 (4th Cir. 2012) ...................................................................13

*Wolfe* v. *Clarke*,
   691 F.3d 410 (4th Cir. 2012) ...................................................................13

**Statutes**

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 2253 .........................................................................................1

28 U.S.C. § 2254(a) ..................................................................................9, 16

28 U.S.C. § 2254(d) ...............................................................................passim

28 U.S.C. § 2254(d)(1)...................................................................8, 9, 10, 15

28 U.S.C. § 2254(d)(2)...................................................................... 1, 8, 15

28 U.S.C. § 2254(e)(2)............................................................................10, 16

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253 because Broadnax filed a notice of appeal on August 21, 2019, and this Court granted his motion for a Certificate of Appealability ("COA") on July 24, 2020. (ROA.1261–1263; Dkt. No. 00515502923.)

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

This Court granted a COA on the following question: "Whether the district court erroneously concluded that" a spreadsheet listing the qualified jurors that identified the jurors' race, and on which the names of black jurors, and only black jurors, were bolded "was barred by [*Cullen* v.] *Pinholster* and 28 U.S.C. § 2254(d)(2). (Issue IA(2)(b) and (d) in Petitioner's Briefing)." (*Id.*) This appeal thus involves consideration of (i) whether *Pinholster* barred the District Court from considering the spreadsheet in ruling on Broadnax's *Batson* claim, (ii) whether the District Court was permitted to consider the spreadsheet under 28 U.S.C. § 2254(d), and because the COA was granted on procedural issues related to Broadnax's *Batson* claim, (iii) whether the District Court's denial of Broadnax's *Batson* claim was reversible error. *See Slack* v. *McDaniel*, 529 U.S. 473, 483 (2000) ("[A] COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.").

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

#### A.    Jury Selection and Trial

James Broadnax, who is black, was convicted and sentenced to death at the age of 19 by a nearly all-white jury in Dallas County, Texas, after the prosecution used peremptory strikes to remove every single black prospective juror and one Hispanic prospective juror. (ROA.796; ROA.10426–10427.)

Many of the prosecution's stated reasons for striking nonwhite veniremembers applied equally to white veniremembers it did not strike. The State also engaged in disparate questioning of white and nonwhite veniremembers. For example, veniremember McCraney—who is black, and whom the State later described as "nervous" in its justification for striking her—was asked to look at Broadnax and was then provided with a graphic description of the death penalty. (ROA.3580–3582.)    Three white veniremembers who similarly expressed nervousness were not treated this way. (*See* ROA.3600; ROA.3893; RR56:135 (Morris Questionnaire at 17) .) Veniremember Vation, a 70-year-old black woman, was also subjected to race-based questioning, with the prosecutor implying Vation would not be able to vote for the death penalty in a case involving a young black man, just prior to providing her with a graphic description of the death penalty.

(ROA.3760-3761.)[1]  And the State failed to question nonwhite veniremembers on answers in their questionnaires—suggesting these topics were not actually important to the State—yet later pointed to these answers as justifications for their strikes. (ROA.959.)  The State ultimately used its peremptory strikes to remove every black veniremember—seven in all—and one Hispanic veniremember.  (ROA.796; ROA.10426–10427.)  When challenged, the State provided a laundry list of reasons for each strike.  (ROA.10350–10421.)  Many of these reasons applied just as well to white veniremembers who were not struck.[2]  Some of those reasons were implausible or echoed racist stereotypes.[3]  And the State mischaracterized the record in justifying its strikes.[4]

---

[1] *See also* ROA.4075 (the State asking black veniremember Riser whether it was a problem that "somebody could potentially say to you [after rendering a verdict], how could you do that to another black man?").

[2] For example, the State claimed that it struck black veniremember Long because she allegedly answered that "a defendant's voluntary intoxication would preclude her from assessing the death penalty."  *Broadnax*, 2011 WL 6225399, at *3.  Yet Long clearly stated that regardless of a defendant's intoxication, she would "still be able to render a verdict based on the crime that was committed."  (ROA.9499.)  "As such, any misperception" regarding Long's views "was put to rest . . . well before the prosecutor advanced [those views] as the justification for the State's strike." *Hayes* v. *Thaler*, 361 F. App'x 563, 572 (5th Cir. 2010).  By contrast, empaneled white juror Stinson described intoxication as a mitigating circumstance and agreed that it "may be a reason that you might want to give them life without parole instead of [a] death sentence."  (ROA.9219.)

[3] The State told the trial court that it was striking Rivera in part because she had "four children and no job," (ROA.10364), while at the same time justifying its strike of McCraney because she was "a single woman with no children."  (ROA.10352.)  The State noted that "it was [the prosecutor's] impression [Rivera] so desperately wanted to sound intelligent, but she absolutely could not give a straight answer," (ROA.10364, 10366), and similarly claimed that it struck Vation because her questionnaire "was full of spelling errors and, of course, grammar."  (ROA.10359)  Yet the State failed to strike white veniremembers whose questionnaires exhibited spelling and grammatical errors.  (*See, e.g.*, RR56: 139, 141-146, 154 (Ferreira Questionnaire at 2, 4–9, 17).)

[4] For example, the State claimed that it struck black veniremember Riser because he stated during voir dire: "I see my son in this room," suggesting that Riser identified his son with Broadnax.

3

Despite this evidence, Broadnax's *Batson* objections were denied at first, but the trial judge ultimately expressed discomfort with the composition of the all-white jury. (ROA.10426–10427; ROA.10574.) Yet the judge was reluctant to sustain a *Batson* challenge, because he was unwilling to question the credibility of the prosecutors:

> The problem with all of these cases, of course, is that if you grant a *Batson* challenge it implies some sort of nefarious intent on the part of the prosecutors. *When you say it's a pretext, you're essentially saying that the prosecutors are lying. That's the problem I have with the whole line of cases.* Having said that, again, I – it does concern me quite a bit that one hundred percent of the African-American jurors were struck from the panel and that there are none on the jury.

(ROA.10574 (emphasis added).)

After a recess, the court returned and again expressed resistance to ever grant a *Batson* challenge. (*Id.*) But the judge nevertheless felt compelled to grant Broadnax's *Batson* objection to the peremptory removal of Patterson.[5] While Patterson was restored to the jury, the other seven nonwhite veniremembers Broadnax challenged under *Batson* were not. Broadnax thus faced a nearly all-white

---

(ROA.10370–10371.) Riser was referring to the bailiff and counsel, not Broadnax. (ROA.4072–4074.)

[5] The judge stated: "I'm going to grant the *Batson* challenge and I'm going to do so because of the fact that there are no African-American jurors on this jury and there was a disproportionate number of African-Americans who were struck. This is not to be considered in any way as some sort of negative context on any lawyers in this case. It's because I simply have to look at the factors that are contained in the *Miller-El* and I made my decision based on that." (ROA.10574.) The judge's order restoring Patterson stated: "The Court finds that the Movant has shown and the record supports that there was evidence of disparate treatment on the part of the State." (ROA.2004).

jury in a trial marked by unabashed appeals to racial prejudices, including opening statements from the State that Broadnax "went to Garland because that's where the rich white folks live," and warning the jury that it would "hear quite a bit of street talk in this case." (ROA.10788.) Broadnax was convicted and sentenced to death. (ROA.5874–5875.)

### B.    Broadnax's State Court Proceedings

Broadnax appealed to the Texas Court of Criminal Appeals ("CCA"), arguing that the State's peremptory strikes violated *Batson* v. *Kentucky* and that the reseating of Patterson failed to cure the other *Batson* violations. (*See* ROA.12543–12547.)

The CCA affirmed his conviction and sentence. *Broadnax* v. *State*, No. AP-76207, 2011 WL 6225399 (Tex. Crim. App. Dec. 14, 2011). It did not analyze the stark statistical disparities in the State's strikes. *Id.* at *3–4. And while purporting to conduct a "Comparative Juror Analysis," the CCA focused on one facially race neutral reason the State provided for each of the challenged strikes and determined that none of those reasons applied equally to white veniremembers. *Id.* at *3. It did not consider the State's other proffered reasons for each of its strikes or the disparate questioning of white and nonwhite veniremembers.

### C.    Federal Court Proceedings

On May 18, 2016, after exhausting his state appellate and post-conviction remedies, Broadnax filed a petition for a writ of habeas corpus in the U.S. District

Court for the Northern District of Texas. (ROA.208–378.) After filing his federal petition, Broadnax's counsel was, for the first time, permitted to review the Dallas County District Attorney's jury selection files from Broadnax's case. (ROA.1090–1091; ROA.1040–1041.) In these files, counsel discovered a spreadsheet that specified the race of each qualified juror and bolded the names of every black juror (and only the black jurors). (*See* ROA.796.)

Although Broadnax's counsel had requested access to those files during state post-conviction proceedings, they were withheld based on the office's interpretation of the work product privilege. (ROA.1090–1091; ROA.1040–1041.) The District Attorney's office revised its policy, only producing the files to Broadnax's counsel in June 2016. (*Id.*) Broadnax filed an amended petition on November 18, 2016. (ROA.541–716.)

In response, the Director contended that the spreadsheet was created after jury selection concluded on July 20, 2009, and to facilitate the State's response to Broadnax's *Batson* challenges. (*See* ROA.929.) Broadnax presented evidence and argument establishing that this could not be true: he showed that the spreadsheet had to have been created during jury selection, between July 9, 2009 and July 17, 2009, because the 48th qualified juror, James McElroy, was accepted to the qualified jury pool on July 17, and his name was added to the spreadsheet in handwriting. (*See* ROA.1065–1066 (citing ROA.10331–10333).) Thus, the typewritten portion of the

6

spreadsheet was created prior to July 17, and Mr. McElroy's name was added in handwriting after he was added to the jury pool.  (*See id.*)[6]

In its Opinion and Order, the District Court concluded that *Pinholster*, 563 U.S. at 185, barred the court from considering the spreadsheet because it had not been presented to the state court, although it did not fault Broadnax for this. (ROA.1190–1191.)  The court also concluded that the State's reasons for striking the black and Hispanic veniremembers "all constituted racially neutral, objectively verifiable, record-based, reasons for a prosecutorial peremptory strike," (ROA 1190), and that the record "fully supported race-neutral reasons given by the prosecution for peremptorily striking" each of the nonwhite veniremembers. (ROA.1187.)  The court dismissed the similarities between the answers given by white empaneled jurors and nonwhite veniremembers as "hardly surprising – or conclusive of anything."  (ROA.1191.)

## SUMMARY OF THE ARGUMENT

The spreadsheet should be considered for two reasons.

*First*, the spreadsheet falls within the circumstance recognized in *Pinholster*, 563 U.S. at 186 n.10, in which evidence withheld during state proceedings through

---

[6] The State's argument is not credible for another reason, as well: During jury selection, Broadnax had raised a *Batson* challenge to the strike of Angelita Martin Rivera, an Hispanic veniremember, in addition to the strikes of the seven black veniremembers.  (ROA.10363.)  If the State had indeed created this spreadsheet to assist it in responding to Broadnax's *Batson* challenges, Rivera's name would have been bolded too—but it was not.  (ROA.796.)

no fault of the petitioner can be considered.

*Second*, based on the state court record alone, the CCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law under § 2254(d)(1), and was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Therefore, § 2254(d) did not bar the District Court from considering the spreadsheet in determining whether to grant relief. *See Smith* v. *Cain*, 708 F.3d 628, 634–35 (5th Cir. 2013). Permitting consideration of the spreadsheet is also consistent with the Supreme Court's precedents finding similar evidence to be probative of discriminatory intent and emphasizing the importance of vigorously enforcing *Batson*.

## STANDARD OF REVIEW

This Court reviews the district court's factual determinations for clear error and its legal conclusions *de novo*. *Rivera* v. *Quarterman*, 505 F.3d 349, 361 (5th Cir. 2007). In considering a claim adjudicated on the merits by a state court, a federal court may set aside the state court's determination only if it resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The Court may then grant

the writ where the petitioner shows that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## ARGUMENT

**I. THE DISTRICT COURT INCORRECTLY DENIED BROADNAX'S *BATSON* CLAIM AND INCORRECTLY DETERMINED THAT CONSIDERATION OF THE SPREADSHEET WAS BARRED**

### A. *Pinholster* Does Not Bar Consideration of the Spreadsheet

The District Court's decision that it could not consider the spreadsheet was erroneous because the spreadsheet falls within the circumstance, recognized by the Supreme Court in *Pinholster*, permitting consideration of newly discovered, previously withheld evidence.

In *Pinholster*, the Court interpreted § 2254(d)(1), which places limitations on federal courts' ability to grant habeas relief with respect to claims "adjudicated on the merits" in state court. The Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181. It thus rejected a petitioner's attempt to introduce, for the first time in federal court, various pieces of mitigation evidence that were available during state proceedings but not presented to the state court. *Id.* at 177, 181. But the Court recognized that, in certain situations, new evidence is not barred from being introduced during federal habeas review, noting that "state prisoners may sometimes submit new evidence in federal court, [although] AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id.* at 186. Indeed, the Court

9

made clear that § 2254(e)(2), regarding federal court evidentiary hearings, "continues to have force where § 2254(d)(1) does not bar federal habeas relief," such as where claims do not "fall within the scope of § 2254(d), which applies only to claims 'adjudicated on the merits in State court proceedings.'" *Id.* at 185–86.

The scope of the Court's holding in *Pinholster* was the focus of a discussion between the majority opinion and Justice Sotomayor's dissent in that case. Justice Sotomayor suggested that, under the majority's holding, a petitioner who diligently pursued a *Brady* claim in state court but who only learned of additional, withheld evidence supporting that claim after state court proceedings concluded would be barred from presenting that evidence in federal habeas proceedings, and thus would be worse off than a petitioner who failed to diligently pursue a *Brady* claim at all, but who could assert cause and prejudice for his default. *Id.* at 214–16 (Sotomayor, J., dissenting).

The majority flatly rejected this interpretation of its holding, stating that "Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witness statements . . . may well present a new claim," *id.* at 186 n.10, rendering the § 2254(d) limitations inapplicable to the hypothetical petitioner and permitting consideration of the new evidence. The majority expressly declined to "decide where to draw a line between new claims and claims adjudicated on the merits." *Id.* But its holding makes clear that the distinction between Pinholster, who failed to

10

present available mitigation evidence during state proceedings, and the hypothetical petitioner, who was denied the ability to present evidence to the state court because it was withheld from him, is an important factor. Indeed, the majority emphasized that federal courts sitting in habeas ought not become "an alternative forum for trying facts and issues which *a prisoner made insufficient effort to pursue in state proceedings.*" *Id.* at 186 (emphasis added).

The Supreme Court also made clear that it does not matter that the "new claim" being presented in federal court is advanced using the same legal theory presented in state court. Justice Sotomayor's hypothetical petitioner had presented a *Brady* claim based on exculpatory witness statements in state court, but sought to present additional, withheld exculpatory witness statements in support of that same *Brady* claim in federal court. *Id.* at 215–16 (Sotomayor, J., dissenting).

Broadnax argued before the District Court that his claim based on the spreadsheet fell exactly within the framework of this hypothetical petitioner. Specifically, he noted the spreadsheet was withheld by the District Attorney until federal habeas proceedings, which denied the state court the ability to consider powerful, contemporaneous evidence of the prosecutors' race-conscious decision-making at the time of jury selection. (*See* ROA.1070–1071.) The Director did not dispute the essential fact that the spreadsheet was withheld during state court proceedings.

The District Court declined to address this argument, summarily holding that *Pinholster* "bars this Court from considering new evidence that was not properly before the [CCA] when it rejected Broadnax's *Batson* claims on direct appeal." (ROA.1191.) This was error, and this Court should reverse. Broadnax submits that the spreadsheet falls squarely within the circumstance recognized in *Pinholster*, rendering § 2254(d) inapplicable to consideration of the spreadsheet.

Moreover, considering the spreadsheet is consistent with, and furthers the goals of, AEDPA. Congress intended "to channel prisoners' claims first to the state courts," leaving them with "primary responsibility" for review of prisoners' claims. *Pinholster*, 563 U.S. at 182. A framework that incentivizes prosecutors to withhold evidence until state proceedings have concluded denies state courts the ability to meaningfully review prisoners' claims. Indeed, in *Williams* v. *Taylor*, the Supreme Court explained: "comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort." 529 U.S. 420, 437 (2000); *see also Gibson* v. *Wetzel*, 2016 WL 1273626, at *4 (E.D. Pa. Mar. 31, 2016) ("[T]o ignore the materials that did not emerge until the federal habeas proceedings would be to reward the prosecutor for withholding them." (citing *Gonzalez* v. *Wong*, 667 F.3d 965, 972 (9th Cir. 2011))).

Considering the spreadsheet is also consistent with this Court's recent cases, which uniformly recognize that *Pinholster* does not bar consideration of new

12

evidence with respect to such new claims.  *See, e.g.*, *Nelson* v. *Davis*, 952 F.3d 651, 661, 671–72 (5th Cir. 2020); *Clark* v. *Stephens*, 627 F. App'x 305, 309 (5th Cir. 2015); *Escamilla* v. *Stephens*, 749 F.3d 380, 394–95 (5th Cir. 2014).  Other courts likewise recognize that factual development in federal courts is not foreclosed by *Pinholster*, particularly where the new evidence had been withheld.  The Fourth Circuit, in *Wolfe* v. *Clarke*, 691 F.3d 410 (4th Cir. 2012), concluded that "[b]ecause we focus on an aspect of th[e *Brady*] claim—the long-concealed Newsome report— that was not adjudicated in the state court proceedings, we owe no 28 U.S.C. § 2254(d) deference to any state decision."  *Id.* at 423.  Similarly, in *Winston* v. *Pearson*, 683 F.3d 489, 501 (4th Cir. 2012), *cert. denied*, 568 U.S. 1205 (2013), the court held that § 2254(d) was no bar to new evidence where petitioner was hindered from producing critical evidence through no fault of his own.

Many of those decisions analyze this issue using the terminology utilized in pre-*Pinholster* exhaustion analysis, asking whether the new evidence "fundamentally alters" an existing claim.  *See, e.g.*, *Dickens* v. *Ryan*, 740 F.3d 1302, 1317, 1320 (9th Cir. 2014) (en banc) (holding that "*Pinholster* does not bar Dickens from presenting evidence of his 'new' IAC claim . . . [because] the new allegations and evidence 'fundamentally altered' that claim." (citation omitted)); *Nelson*, 952

13

F.3d at 671 (describing question as whether new evidence "fundamentally alter[ed]" legal claim).[7]

Broadnax's claim meets this "fundamentally altered" standard, as the spreadsheet is powerful and material evidence that transforms his *Batson* claim.  But *Pinholster* did not hold that the distinction between "new claims" and those "adjudicated on the merits in state court" should be drawn by applying a pre-*Pinholster* exhaustion analysis.  Rather, the Court expressly declined to draw the line between "new claims" and old claims—although it suggested that courts should be more likely to recognize a "new claim" where, as here, the evidence had been withheld.  *See Pinholster*, 563 U.S. at 186 n.10.  Thus, the Court's decision suggests that more claims than those that meet the "fundamentally altered" standard qualify as new claims under *Pinholster*.  The spreadsheet at issue, which was withheld by the state throughout state court proceedings, presents the precise circumstance that was discussed by the majority and dissent in *Pinholster*.[8]

---

[7] *See also Wessinger* v. *Cain*, 2015 WL 4527245, at *16 n.3 (M.D. La. July 23, 2015) (holding that the new evidence was "material and significantly different and stronger than what [Petitioner] presented to the state court"), *rev'd on other grounds sub. nom. Wessinger* v. *Vannoy*, 864 F.3d 387 (5th Cir. 2017).

[8] For that reason, considering the spreadsheet is perfectly consistent with *Hayes*, 361 F. App'x at 574 n.8.  There, the Court permitted the petitioner to supplement the record to include "juror cards from the trial . . . to assist in the comparative [juror] analysis," although it noted that the materials did not "fundamentally alter" the *Batson* claim, triggering an exhaustion dismissal.  *Id.*  That pre-*Pinholster* decision necessarily did not address whether such materials would present a "new claim" within the meaning of *Pinholster*, 563 U.S. at 186 n.10.

In addition to being consistent with AEDPA and *Pinholster*, considering the spreadsheet is consistent with other Supreme Court and Fifth Circuit decisions considering similar, newly discovered *Batson* evidence.   In *Miller-El* v. *Dretke* ("*Miller-El II*"), the Court considered juror cards, presented for the first time on federal habeas review, showing that the prosecutors "marked the race of each prospective juror."  545 U.S. 231, 264 (2005); *see also Ramey* v. *Davis*, 942 F.3d 241, 254 (5th Cir. 2019) (acknowledging both *Pinholster* and *Hayes*'s consideration of supplemental evidence, and granting COA).   These decisions suggest that 28 U.S.C. § 2254(d) should not bar consideration of similarly powerful evidence.

### B.     The CCA's Decision Was Unreasonable on the Record Before It; § 2254(d) Thus Does Not Bar Consideration of the Spreadsheet

The CCA's decision, which did not consider the stark statistical disparities in the State's exercise of peremptory strikes, the implausible reasons for those strikes, the disparate questioning of black and white veniremembers, and the trial judge's resistance to applying *Batson*, was contrary to and involved an unreasonable application of clearly established federal law under § 2254(d)(1), and was an unreasonable determination of the facts under § 2254(d)(2).  Therefore, § 2254(d) was no bar to the District Court's consideration of the spreadsheet.

Although "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," *Pinholster*, 563 U.S. at 181, where the § 2254(d) requirements are met based on that record, a federal court may

consider additional evidence to determine whether habeas relief is appropriate under § 2254(a) or whether to order an evidentiary hearing under § 2254(e)(2). *See, e.g. Smith*, 708 F.3d at 634–35 ("*Pinholster*'s limitation on federal evidentiary hearings does not apply once the district court conclude[s], solely on the basis of the state court record, that the state trial court unreasonably applied federal law.").[9]

Here, the CCA did not consider several important circumstances that clearly established federal law recognizes as probative of discriminatory intent. The CCA thus made an unreasonable determination of the facts concerning Broadnax's *Batson* challenge.[10]

*First*, the court did not analyze the stark statistical disparities in the State's exercise of its peremptory strikes. At Broadnax's trial, the State used its peremptory challenges to strike every single black qualified juror along with an Hispanic qualified juror. (ROA.796; ROA.10426–10427.) "[T]otal or seriously disproportionate exclusion" of black jurors "is itself such an unequal application of the law . . . as to show intentional discrimination." *Batson*, 476 U.S. at 93; *see also Miller-El II*, 545 U.S. at 240–41 (finding it "remarkable" that the State had used 10

---

[9] *See also Hooper* v. *Ryan*, 729 F.3d 782, 787 (7th Cir. 2013) (remanding for *Batson* evidentiary hearing where Seventh Circuit found state court unreasonably ruled on that claim); *Madison* v. *Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1249–50 (11th Cir. 2014) (requiring evidentiary hearing on *Batson* claim where state courts unreasonably ruled on that claim); *Sanchez* v. *Roden*, 753 F.3d 279, 307–08 (1st Cir. 2014) (same).

[10] Consistent with the panel's July 24, 2020 order, we do not repeat all of the points previously made in Broadnax's briefs in support of his COA motion, and respectfully refer the Court to our opening and reply COA briefs for a more complete discussion of the comparative juror analysis.

peremptory strikes to exclude 91% of the eligible black veniremembers); *Hayes*, 361 F. App'x at 570 (striking "100% of the eligible African-American venire members" was "indicative of discriminatory intent" and "unlikely to be the product of happenstance").

*Second*, the CCA unreasonably applied federal law and reached an unreasonable determination of the facts in purporting to conduct a comparative juror analysis as part of Broadnax's *Batson* claim, which this Court has recognized is required by *Miller-El II*. *See Reed* v. *Quarterman*, 555 F.3d 364, 373 (5th Cir. 2009).

It is insufficient for a court reviewing a *Batson* challenge to treat as dispositive a prosecutor's single, facially race-neutral reason and fail to consider the rest of the record. "[A] facially neutral reason, on its own, does not suffice to answer a *Batson* challenge." *Adkins* v. *Warden, Holman CF*, 710 F.3d 1241, 1251 (11th Cir. 2013) (citing *Miller-El II,* 545 U.S. at 240). As the Supreme Court reiterated just last year, "[w]e must examine the whole picture. . . . We cannot just look away. Nor can we focus on [a strike] in isolation." *Flowers* v. *Mississippi*, 139 S. Ct. 2228, 2250 (2019). Yet that is precisely what the CCA did here.

*Third*, the CCA failed to acknowledge that the disparate questioning conducted of white and black panelists can be probative of discriminatory intent. *See id.* at 2247 (citing *Miller-El* v. *Cockrell*, 537 U.S. 322, 331–32 (2003)); (*see also supra* p. 2–3.) The State also failed to question black veniremembers on certain

17

topics the State later used to justify its strikes.  (*See* COA Reply at 16; ROA.959.)

The "State's failure to engage in any meaningful voir dire examination on a subject

the State alleges it is concerned about is evidence suggesting that the explanation is

a sham and a pretext for discrimination."  *Flowers*, 139 S. Ct. at 2249 (quoting

*Miller-El II*, 545 U.S. at 246).

*Fourth*, the CCA also failed to acknowledge that some of the prosecutors'

stated reasons for their strikes were implausible and echoed racist stereotypes.  (*See*

*supra* p.3.)  These were "particularly suspicious explanation[s] given the role that

the claim of 'low intelligence' has played in the history of racial discrimination from

juries."  *McGahee* v. *Ala. Dep't of Corr.*, 560 F.3d 1252, 1265 (11th Cir. 2009).

These errors rendered the CCA's decision unreasonable.  The District Court

erred in holding that this was not so and by not properly reviewing the CCA's

decision, stating that, when reviewing state court decisions, federal habeas courts

must "review only a state court's ultimate decision and not the written opinion

explaining that decision" and also must "consider all the arguments and theories that

could have supported the state court's decision."  (ROA.1114 (citing *Evans* v. *Davis*,

875 F.3d 210, 216–17 (5th Cir. 2017)).)  Yet under *Wilson* v. *Sellers*, a § 2254(d)

analysis requires the court to "'train its attention on the particular reasons—both

legal and factual—why state courts rejected a state prisoner's federal claims,' . . .

and to give appropriate deference to that decision."  138 S. Ct. 1188, 1191–92 (2018)

(internal citation omitted). Where "the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court *simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable*." *Id.* (emphasis added); *see also Thomas* v. *Vannoy*, 898 F.3d 561, 568 (5th Cir. 2018) (stating that the "continued viability" of the approach articulated in *Evans* is "uncertain" after *Wilson*).

Because the CCA's reasons for rejecting Broadnax's *Batson* claim were unreasonable, Broadnax met the requirements of § 2254(d), and the District Court should have considered the spreadsheet in determining whether to grant relief or conduct an evidentiary hearing. *See Smith*, 708 F.3d at 634–35. This would dovetail with numerous federal decisions finding similar evidence to be probative in analyzing *Batson* claim. Courts have found *Batson* violations where the prosecutors' contemporaneous notes reveal their "persistent focus on race." *Foster* v. *Chatman*, 136 S. Ct. 1737, 1754 (2016); *see also Adkins*, 710 F.3d at 1252–53 (describing as "strong evidence of discriminatory intent" the fact that "the prosecution explicitly noted the race of every black veniremember, and only black veniremembers, on the jury list the prosecutor relied upon in striking the jury").

Moreover, the Supreme Court's cases have "vigorously enforced and reinforced [*Batson*], and guarded against any backsliding." *Flowers*, 139 S. Ct. at 2243 (collecting cases). In *Miller-El II*, the Court granted relief on a *Batson* claim

arising from the same county as Broadnax's trial, observing that the Dallas County D.A.'s Office had, for decades, "followed a specific policy of systematically excluding blacks from juries." 545 U.S. at 263.[11] Nonetheless, the trial judge here was hesitant to apply *Batson*, even where the State had struck 100% of black panelists. The spreadsheet—and the State's false explanation for it—provide powerful additional evidence that the prosecution did precisely what *Batson* forbids: note jurors by race to aid in striking them. This is as close to a smoking gun as is likely to be found, and it should be considered in determining whether to grant relief.

## CONCLUSION

For the above reasons, Broadnax requests that the Court reverse the District Court's decision and remand with instructions to grant Broadnax's petition, or in the alternative, remand for further consideration of and an evidentiary hearing on his *Batson* claim.

---

[11] *See also Chamberlin* v. *Fisher*, 885 F.3d 832, 846 (5th Cir. 2018) (Costa, J., dissenting) (quoting a Texas judge's observation, in 2008 (the year before Broadnax's trial), that "[a]ll these problems [associated with peremptory strikes]—discriminating against minorities, disrupting trial, and discarding perfectly good jurors—are particularly acute in Texas" (citation omitted)).

20

Respectfully submitted,

/s/ Steven C. Herzog
Steven C. Herzog
Kimberly A. Francis
Ameya S. Ananth
PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

/s/ Camille M. Knight
Camille M. Knight
Local Counsel
Burleson, Pate & Gibson, LLP
900 Jackson Street, Suite 330
Dallas, TX 75202
(214) 871-4900

Attorneys for Petitioner-Appellant
James Broadnax

21

## CERTIFICATE OF SERVICE

I, Camille M. Knight, a member of the Bar of this Court and counsel for petitioner James Broadnax, certify that, on August 24, 2020, a copy of the attached Brief in Support of Appeal was filed with the Clerk through the Court's electronic filing system.  I further certify that all parties required to be served have been served.

/s/ *Camille M. Knight*
Camille M. Knight
Local Counsel

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I, Camille M. Knight, a member of the Bar of this Court and counsel for petitioner James Broadnax, certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Fifth Circuit Rule 32.3, that the attached Brief in Support of Appeal is proportionately spaced, has a typeface of 14 points or more, not including footnotes, and contains 5,093 words and 20 pages, not including those sections that are excluded under those rules.

*/s/ Camille M. Knight*
Camille M. Knight

August 24, 2020